UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY G. SCUILLA,

      Plaintiff,

V.                           Case No:  2:11-CV-629-FtM-29SPC

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION[1]**

This matter comes before the Court on the Plaintiff Anthony G. Scuilla's Complaint seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed November 2, 2011, in the Middle District of Florida, Fort Myers Division.  On March 16, 2012, the Plaintiff filed his Memorandum of Law in support of the Complaint. (Doc. # 14). On May 15, 2012, the Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision. (Doc. # 15).  On May, 29, 2012, Plaintiff filed an Uncontested Motion for Leave to File Reply Memorandum. (Doc. #16). On May 30, 2012, the Court granted Plaintiff's Motion.  (Doc. #17).  On June 8, 2012, Plaintiff filed a Response to Defendant's Memorandum of Law. (Doc. #18). Thus, the Motion is now ripe for review.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. § 405(g).

1

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge, the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

## **FACTS**

### *Procedural History*

Plaintiff filed an application for a period of disability and disability insurance benefits on July 13, 2009. (Tr. 34). The claim was denied, initially, on December 4, 2009, and again upon reconsideration on March 19, 2010. (Tr. 34). Plaintiff then filed a request for hearing on April 23, 2010. (Tr. 34). On April 5, 2011, M. Dwight Evans, the administrative law judge ("ALJ"), held a hearing on the matter.

After the hearing, the ALJ issued a decision denying the Plaintiff's claim. The ALJ stated Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 19, 2008, through his date last insured of June 30, 2010. (Tr. 36). The ALJ found that Plaintiff possessed the following severe impairments: cerebrovascular accident ("CVA") and residual effects from CVA. (Tr. 36). However, none of these impairments or combination of impairments met or medically equaled an impairment listed in 20 C.F.R. Part 404. (Tr. 39). Finally, the ALJ determined Plaintiff retained the residual functioning capacity to perform a full range of medium work. (Tr. 39). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (Tr. 24–26). Plaintiff has exhausted his administrative remedies. Therefore, this case is ripe for review under 42 U.S.C. § 405(g).

### *Plaintiff's History*

Plaintiff was born January 19, 1950. (Tr. 113). At the time of the alleged onset date he was fifty-eight years old. (Tr. 113). Plaintiff has past relevant experience as a real estate agent

and in sales and marketing. (Tr. 44, 134). Of the two jobs, he held the sales and marketing position the longest. (Tr. 118). He can read and write in English. (Tr. 116).

### *Medical History*

From November 19, 2008 to November 24, 2008, Plaintiff was hospitalized at Lee Memorial Health System. (Tr. 178-86). Plaintiff visited the hospital because of right sided weakness that was consistent with left middle cerebral artery thromboembolic. (Tr. 178). Plaintiff underwent an echocardiogram. (Tr. 178). This revealed mild concentric left ventricular hypertrophy. (Tr. 178). That same day, Plaintiff underwent a brain MRI and carotid Doppler ultrasound. (Tr. 203–04). The MRI revealed acute ischemic infarction in the left temporal lobe. (Tr. 203). However, the ultrasound revealed no significant stenosis with the extracranial common carotid artery or internal carotid artery. (Tr. 204).

On November 23, 2008, Plaintiff had an abnormal ECG, which revealed marked bradycardia. (Tr. 197). The next day, Dr. Shaheen Faruque discharged Plaintiff. (Tr. 186). At the time of discharge, Dr. Faruque diagnosed Plaintiff with a cerebral occlusion; in addition to cerebral infarction, hemiplegia, aphasia, speech disturbance, hyperlipidemia, cardiac dysrhythmias, and history of testicular malignancy. (Tr. 186). To help with these conditions, Dr. Faruque prescribed Plaintiff Aspirin, Zocor, and Prilosec. (Tr. 186).

On December 10, 2008, Plaintiff visited the Florida Neurology Group for an evaluation of his stroke. (Tr. 190). Dr. Paul Driscoll treated Plaintiff and noted that Plaintiff had completed physical and speech therapy. (Tr. 190). Dr. Driscoll further noted that Plaintiff only had a mild aphasic quality to his speech. (Tr. 190). Based on this visit, Dr. Driscoll diagnosed Plaintiff with atherothrombotic due to cerebral infraction. (Tr. 193).

On October 20, 2009, Plaintiff visited Dr. Eshan M. Kibria at the request of the SSA. (Tr. 258). Dr. Kibria diagnosed Plaintiff with a speech problem and a history of left CVA with right-sided weakness. (Tr. 259). Dr. Kibria's findings indicate that Plaintiff had minimal confusion with complex tasks and that Plaintiff's mental work-related activities, understanding, memory, concentration, social interaction, and adaption were all intact. (Tr. 259). Furthermore, Dr. Kibria found that Plaintiff had no muscle weakness or atrophy. Instead, he indicated that Plaintiff had full motor strength in all extremities, in addition to normal gross and fine finger dexterity. (Tr. 37, 42, 259).

On October 22, 2009, Plaintiff visited Dr. Claudia Zsigmond at the request of the SSA. (Tr. 263). After the visit, Dr. Zsigmond found that Plaintiff had a cognitive impairment. However, Plaintiff could provide reliable personal history with little difficulty. (Tr. 265). Additionally, Dr. Zsigmond found Plaintiff had adequate recall and no articulation problems. (Tr. 265). As a final diagnosis, Dr. Zsigmond found Plaintiff had rule out cognitive disorder and an adjustment disorder. (Tr. 265-66).

From November 12, 2009 to September 27, 2010, Plaintiff received treatment at the Alessi Family Care Center. (Tr. 355-63). On March 8, 2010, Dr. Alessi's neurological exam indicated that Plaintiff's speech, memory, and conversation were appropriate with no evidence of focal defects. (Tr. 357-58). Dr. Alessi's treatment records also indicated that Plaintiff denied weakness, seizures, memory loss, or numbness. (Tr. 357). A follow-up visit on September 27, 2010, saw Plaintiff present with complaints of fatigue and tiredness. (Tr. 355). However, a neurological exam again showed that Plaintiff's speech, memory, and conversation were appropriate without evidence of focal defects. (Tr. 356).

On December 1, 2009, Dr. James L. Meyers, State Agency Psychologist, assessed Plaintiff's functional capacity. (Tr. 320). Dr. Meyers noted that Plaintiff's ability to understand and remember detailed instructions may be moderately limited. (Tr. 320). However, Dr. Meyers noted that in spite of noted memory limitation, Plaintiff could be expected to understand and remember simple instructions and may improve with repetition. (Tr. 320). He also opined that Plaintiff could be expected to understand, remember and complete simple one or two step instructions and may perform better with well learned tasks. (Tr. 320). Dr. Meyers indicated that Plaintiff should be able to function in a stable environment. (Tr. 320). Dr. Meyers further opined that Plaintiff retained the ability to perform simple, repetitive tasks and likely has abilities to perform tasks at high levels in spite of the moderate limitations noted and is able to meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified medical determinable impairments. (Tr. 320).

On February 1, 2010, Dr. Driscoll re-evaluated Plaintiff's left hemisphere stroke. (Tr. 324-27). The report indicated that Plaintiff continued use of Aspirin and Zocor daily. (Tr. 324). He also noted that Plaintiff continued to have higher cortical function difficulties and cognitive impairment. (Tr. 324). The completed re-evaluation resulted in Dr. Driscoll diagnosing Plaintiff with atherothrombotic. (Tr. 327).

On March 4, 2010, Dr. Albert Ponterio completed a Residual Functional Capacity ("RFC") assessment of Plaintiff. (Tr. 328-35). Dr. Ponterio found Plaintiff had post CVA with minimal residual. (Tr. 328). Additionally, Dr. Ponterio found Plaintiff had no push, pull, postural, manipulative, visual, communicative, or environmental limitations. (Tr. 329-32). In conclusion, Dr. Ponterio opined that Plaintiff could perform a full range of medium work. (Tr. 328-35).

On March 15, 2010, Plaintiff underwent a mental residual functional capacity assessment by Dr. Gary W. Buffone, State Agency Psychologist. (Tr. 336). Dr. Buffone indicated that Plaintiff may have difficulties with tasks involving sustained focus and complex mental demands but remains mentally capable of carrying out simple instructions and tasks as reflecting in his activities of daily living. (Tr. 336). Dr. Buffone further opined that Plaintiff may have difficulties with high stress/demand task situations and would likely benefit from assistance with goal-planning. (Tr. 336).

On June 21, 2010 and June 28, 2010, The Center for Psychology treated Plaintiff for psychological services. (Tr. 354). Dr. Michael B. Spellman reported that, despite occasionally misuse of words, Plaintiff's thought processes were clear, coherent, and goal-directed with evidence of a thought disorder. (Tr. 354). Dr. Spellman noted that on an abbreviated Mini Mental Status Exam, Plaintiff had trouble recalling two of three words after a brief delay with interference and became befuddled once he lost his place. (Tr. 354).

Finally, on March 10, 2011, Dr. Alessi completed a stroke residual functional capacity questionnaire, which indicated that Plaintiff had a cerebrovascular accident in 2008. (Tr. 365). The report further indicated that Plaintiff complained of cognitive limitations, which prevented him from working. (Tr. 365). Dr. Alessi listed all the symptoms experienced by Plaintiff and noted that emotional factors contributed to Plaintiff's symptoms and functional limitations. (Tr. 366). In conclusion, Dr. Alessi opined that Plaintiff's impairments could last up to twelve (12) months. (Tr. 367).

*Administrative Law Judge's Decision*

After careful consideration of the record and all the evidence, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 19,

2008, through the date last insured. (Tr. 44). In reaching this decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act on June 30, 2010. (Tr. 36). The ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 19, 2008, through the date last insured, June 30, 2010. (Tr. 36).

Through the last date insured, the ALJ found that Plaintiff had the following severe impairments: cerebrovascular accident ("CVA") and residual effects from CVA. (Tr. 44). However, none of these impairments or combination thereof met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 39).

Accordingly, the ALJ found that from the alleged onset date through the date last insured, Plaintiff had a residual functioning capacity to perform a full range of medium work as defined in 20 C.F.R. 404.1567(b). (Tr. 39). The ALJ, in arriving at this determination, considered all Plaintiff's symptoms and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence. (Tr. 40). Evidence did establish the presence of underlying impairments and the resulting limitation complained of by Plaintiff. (Tr. 41). However, the frequency, intensity, and duration of symptoms complained of by Plaintiff are inconsistent with the evidence and Plaintiff's residual functioning capacity. (Tr. 41).

Consequently, the ALJ determined that Plaintiff possessed the residual functioning capacity to engage in a full range of medium work. (Tr. 39). Because of Plaintiff's ability to engage in this work, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy. (Tr. 49). In reaching this determination, the ALJ found that "[t]ransferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." (Tr. 49).

## **THE STANDARD OF REVIEW**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[2] 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838–39 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

*Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

*Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

*Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

*Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

*Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f).

the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n.8; Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g) (sentence four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

Plaintiff argues that no substantial evidence supports the ALJ's decision and that the ALJ failed to apply the correct legal standards. First, the Plaintiff argues that the ALJ failed to complete a function-by-function analysis of the RFC in his Decision. To this argument, Plaintiff avers that the ALJ found residual effects from the CVA to be a severe impairment, but failed to explain what the effects were or how they impacted Plaintiff's RFC. Secondly, Plaintiff argues a vocational expert was required at the hearing based on the ALJ's acknowledgement of severe

impairments and Dr. Zsigmond's report. Plaintiff argues that he could not perform the full range of work, so the Grids were inapplicable.

### 1. Whether the ALJ failed to complete a function-by-function analysis of the Plaintiff's RFC in the ALJ's Decision

Plaintiff argues that the ALJ did not follow the function-by-function analysis of all of his work related abilities. In this regard, Plaintiff raises two sub-issues. First, Plaintiff argues that the ALJ failed to explain what the residual effects from the CVA were or how they impacted Plaintiff's RFC. Second, Plaintiff argues that the RFC should be more limited based on Dr. Zsigmond's consultative report.

#### (a) Whether the ALJ Failed to Explain and Determine the Effects of CVA on the Plaintiffs RFC

Plaintiff argues that the ALJ failed to explain what the residual effects from the CVA were or how they impacted Plaintiff's RFC. The Defendant contends that the issue is not whether Plaintiff has specific severe impairments, but rather that the combination of severe impairments results in specific functional limitations that impact Plaintiff's RFC. Defendant argues that the ALJ implicitly analyzed the Plaintiff's RFC when the ALJ determined that Plaintiff could perform work at the medium exceptional level. Additionally, the Defendant argues that the ALJ is not required to specifically discuss Plaintiff's ability to perform each of the exertional demands associated with medium work. Upon careful review, the undersigned finds that the ALJ conducted a sufficient review of all Plaintiff's RFC impairments.

Before engaging in steps four and five of the five-step sequential evaluation, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520; see also id. § 416.920. The residual functional capacity determines what a person "can do in a work setting" despite any impairments or limitations "based on all the relevant evidence in [a claimant's] case."

20 C.F.R. § 404.1545(a); see also id. § 416.945(a). In conducting a residual functional capacity analysis, an ALJ must perform an individual or function-by-function assessment of the following capacities: "[s]itting, standing, walking, lifting, carrying, pushing, and pulling." S.S.R. 96–8p, 1996 WL 374184, at *5 (July 2, 1996). Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy. Id. In addition, the ALJ must provide a narrative discussion of how the evidence supported the ALJ's decision regarding the claimant's residual functional capacity, referencing medical facts and nonmedical evidence. Id. at *7. The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). However, S.S.R. Rule 96–8p's requirement that an ALJ conduct an individual or function-by-function capacity assessment "does not require written articulation of all seven strength demands." Clark v. Astrue, 826 F. Supp. 2d 13, 22 (D.D.C. 2011). Further, it does not mandate any specific format. Zuni v. Astrue, 08-21489-CIV, 2009 WL 2929388 (S.D. Fla. Sept. 9, 2009).

The ALJ considered Plaintiff's ability to sit, stand, walk, lift, carry, push and pull-all of which is listed in the record and noted in the ALJ's decision. The ALJ noted:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c). The claimant can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds frequently, stand and/or walk 6 hours total in an 8-hour workday, sit 6 hours total in an 8-hour workday, and use his upper and lower extremities for unlimited pushing/pulling, other than as shown for lifting and/or carrying.

(Tr. 39).

In making this finding, the ALJ noted that he had considered:

> [A]ll symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
> (Tr. 40).

The ALJ's analysis, though not itemized, provides sufficient review of Plaintiff's impairments and is supported by substantial evidence. Moreover, while the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Plaintiff claims. See Freeman v. Barnhart, 220 F. App'x 957, 960 (11th Cir. 2007) (finding that the ALJ assessed a plaintiff's functional limitations on a function by function basis by stating he did consider all of the evidence even though the ALJ could have been more specific and explicit in his findings).

Additionally, the ALJ properly articulated the weight he accorded each item of evidence and as such the ALJ's reasons were based on substantial evidence. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ noted Plaintiff's testimony in his decision and described Plaintiff's symptoms. (Tr. 40-41). The ALJ noted Plaintiff's complaints of recalling problems with reading and writing, tightening of his right hand, fluctuation of weight, fatigue, loss of cognitive function, pain through the right side of his body, problems with balance, and emotional problems. (Tr. 40-41). The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (Tr. 41). The ALJ did note that Plaintiff testified that he lifts 10 or 15 pounds at the gym and works out 20 minutes, five times a day. (Tr. 40, 43).

The ALJ relied on Plaintiff's treating physicians' reports in addressing Plaintiff's RFC. (Tr. 42-44). Additionally, the ALJ noted that Dr. Zsigmond's Consultative Psychological Evaluation indicated that the Plaintiff's day consisted of walking, exercising, watching television, and reading at times; she noted that his activities of daily living were completed independently, and his ability to dress and bathe had improved since his stroke. (Tr. 43). The ALJ also noted Dr. Spellman's report of June 17, 2010, which indicated that Plaintiff had been actively involved in physical rehabilitation with great success. (Tr. 42). He also reported that Plaintiff's motor activity was within normal limits. (Tr. 42). Furthermore, the ALJ noted that the Plaintiff's Function Report indicates that the Plaintiff was able to care for his personal needs independently and drive a car. (Tr. 42). Although the ALJ gave little weight to Dr. Alessi's report, Dr. Alessi did note that Plaintiff was doing well physically despite the conflicting Stroke Residual Functional Capacity Questionnaire completed on March 10, 2011. (Tr. 42-43).

Moreover, the ALJ considered state agency physician Dr. Albert Ponterio, who indicated that Plaintiff could perform at a medium level of exertion. (Tr. 43). The ALJ appropriately gave great weight to Dr. Ponterio's opinion because it was consistent with the medical evidence of record and Plaintiff's activities of daily living. (Tr. 43) See S.S.R. 96-6p, 61 Fed. Reg. 3446, 34468. As Defendant points out, Dr. Ponterio's opinion is consistent with Dr. Eshan Kibria's opinion. The ALJ noted that Dr. Kibria found that Plaintiff had no muscle weakness or atrophy, graded motor strength of all four extremities was 5/5 including handgrips, normal coordination, and minimal confusion with complex tasks and rapid finger movements. (Tr. 37).

As such, based on this function-by-function analysis, the ALJ's finding that Plaintiff could perform a full range of medium work is supported by substantial evidence. In doing so, the ALJ found that the Plaintiff was capable of performing the past relevant work as a real estate

agent and sales and marketing; and that this work did not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity. (Tr. 44). Specifically, the ALJ stated:

> The claimant has past relevant work as a real estate agent, which is classified as light, skilled work, and sales and marketing which is classified as sedentary, skilled work. Dictionary of Occupational Titles, Volumes I and II, Fourth Edition, Revised 1991, Sections 250.357-018 and 185.167-042, respectively. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed.

(Tr. 44). Based on the record it cannot be said that the ALJ committed error in finding substantial evidence to support the RFC evaluation.

### (b) *Whether the ALJ Should have Limited the RFC Based Upon Dr. Zsigmond's Opinion*

The Plaintiff argues that the RFC should be more limited based on Dr. Zsigmond's consultative report on Plaintiff's cognitive impairments. An RFC is what the claimant is still able to do despite her impairments and is based on all relevant medical and other evidence. 20 C.F.R. §§ 416.945, 416.920(e). An RFC contains both exertional and nonexertional limitations. See Phillips v. Barnhart, 357 F.3d 1232, 1242-1243 (11th Cir. 2004). When considering a plaintiff's nonexertional limitations, the ALJ need only determine whether a plaintiff's nonexertional impairments significantly limit her basic work skills. Id. at 1243 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996, 1002-03(11th Cir. 1987); Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985)).

Specifically, Plaintiff argues that the ALJ throughout his Decision defers to Dr. Zsigmond's consultative report, giving that report weight. Plaintiff states that Dr. Zsigmond found multiple nonexterional limitations and notes multiple residual effects from the CVA. The

Plaintiff notes that Dr. Zsigmond diagnosed him with adjustment disorder with depressed mood, ruled out cognitive disorder, history of stroke, residual affects of stroke, and inability to work at the present time with a global assessment of functioning of 60. (Tr. 265). Plaintiff also stated to Dr. Zsigmond that he experiences symptoms of depression periodically and pain on his right side. (Tr. 265).

However, substantial evidence supports that the ALJ found no nonexertional limitations prior to Plaintiff's DLI. The ALJ noted that Dr. Alessi's treatment records of March 8, 2010, indicated that "the claimant denied weakness, seizures, memory loss, or numbness." (Tr. 42). The ALJ also noted that on September 27, 2010, Dr. Alessi's neurological exam showed that Plaintiff's speech, memory, conversation were all appropriate, and noted that Plaintiff was able to operate a motor vehicle, which requires substantial attention, conversation, and judgment. (Tr. 42). Additionally, the ALJ noted that on October 20, 2009, Dr. Kibria reported that Plaintiff's "work-related mental activities, understanding, memory, concentration, social interaction, and adaptation were intact." (Tr. 37).

However, Plaintiff argues that the ALJ deferred to Dr. Zsigmond's report, which found multiple nonexertional limitations. The ALJ noted Dr. Zsigmond's report in his decision. (Tr. 42). However, Dr. Zsignmond's report suggests that Plaintiff's cognitive ability suffered no impairments. Specifically, the ALJ stated that:

> Dr. Zsigmond stated that, despite the reported cognitive impairment, the claimant provided his personal history with little difficulty and it seemed reliable. She indicated that the claimant did have a notebook that he referred to one or two times in order not [sic] leave any information. Additionally, Dr. Zsigmond reported that the claimant was able to recall the three-word list immediately after the rehearsal and then again 5 minutes later. Dr. Zsigmond also stated that the claimant did demonstrated word-finding difficulties at times; however, he never lost his train of thought and was not tangential at any point in the evaluation. Dr. Zsigmond ruled out a Cognitive Disorder.

(Tr. 42).

15

Furthermore, Plaintiff argues that Dr. Zsigmond diagnosed Plaintiff with Adjustment Disorder with depressed mood, ruled out Cognitive Disorder, history of stroke, residual effects of stroke, unable to work at this time, and a Global Assessment of Functioning (GAF) score of 60. (Tr. 38). However, the ALJ's assessment of this occurred when analyzing the Plaintiff's limitation, not residual functional capacity assessment. The ALJ noted:

> The limitation identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 39).

Furthermore, a GAF score is not critical to the ALJ's mental RFC finding. Smith v. Commissioner, 482 F.3d 873, 877 (6th Cir. 2007) (noting that a GAF score in the high 40's would not preclude a claimant from having the mental capacity to hold at least some jobs in the national economy); Howard v Commissioner, 276 F.3d 235, 241 (6th Cir. 2002) (finding a GAF score is not essential to the RFC's accuracy); Kornecky v. Commissioner, 2006 WL 305648 *13-14 (6th Cir. February 6, 2006) ("according to the [Diagnostic and Statistical Manual's Explanation] of the [GAF] scale, a score may have little or no bearing on the subject's social and occupational functioning . . . [We] not aware of any statutory, or other authority requiring the ALJ to put stock in a [GAF] score in the first place.").

The ALJ pointed out that Dr. Zsigmond ruled out a Cognitive Disorder. (Tr. 39). The ALJ noted that Dr. Alessi's treatment records also indicated that Plaintiff's speech, memory, and conversation were all appropriate and that he was able to operate a motor vehicle, which requires

16

substantial attention, concentration, and judgment. (Tr. 42). Dr. Zsigmond's report supports that the ALJ did in fact assess Plaintiff's cognitive abilities and found no impairment.

Furthermore, the ALJ gave weight to Dr. Spellman's and Dr. Alessi's reports, in using Dr. Zsigmond's opinion. The ALJ stated:

> Specifically, the Consultative Psychological Evaluation with Dr. Zsigmond indicated that despite the reported cognitive impairment, the claimant provided his personal history (address, phone number, date of birth, and social security number) with little difficulty and it seemed reliable. She indicated that the claimant did have a little notebook that he referred to one or two times in order not to leave out any information. Additionally, Dr. Zsigmond reported that the claimant was able to recall the three-word list immediately after the rehearsal and then again five minutes later. Dr. Zsigmond also stated that the claimant did demonstrate word-finding difficulties a few times; however, he never lost his train of thought and was not tangential at any point in the evaluation. Dr. Michael Spellman's report of June 17, 2010, also indicated that the claimant did mis-use words; however, he noted that his thought processes were otherwise clear, coherent, and goal-direct without evidence of a thought disorder. Moreover, Dr. Alessi's treatment records of March 8, 2010, indicated that the claimant denied weakness, seizures, memory loss, or numbness and his treatment records of September 27, 2010, indicated that the claimant's speech, memory, and conversation were all appropriate. Most significantly, Dr. Zsigmond ruled out a Cognitive Disorder.

(Tr. 44).

Therefore, the ALJ properly assessed Plaintiff's RFC, given Dr. Zsigmond's consultative report on Plaintiff's cognitive impairments and supported his RFC determination with substantial evidence from the record. If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis, 125 F. 3d at 1439.

### 2. *Whether a Vocational Expert was Required at the Hearing*

Plaintiff argues a vocational expert was required at the hearing based on the ALJ's severe impairments in Finding 3 (Tr. 36) and Dr. Zsigmond's report, which the ALJ gave controlling weight.

Plaintiff's contention that the ALJ was required to obtain testimony from a vocational expert is without merit. The ALJ found at the fourth step of the sequential evaluation process that Plaintiff could perform his past relevant work as generally performed in the national economy (Tr. 44). 20 C.F.R. §§ 404.1520(a) (4)(iv), 416.920(a)(4)(iv). An ALJ is not required to consult a vocational expert in determining whether a claimant can perform his past relevant work. Lucas v. Sullivan, 918 F.2d 1567, 1573, n. 2 (11th Cir.1990); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987). Plaintiff carries the burden of showing he cannot perform his past relevant work at step four. See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

In this case, the ALJ properly relied on the Dictionary of Occupational Titles (DOT) to find that Plaintiff could perform his past relevant work as generally performed in the national economy (Tr. 33). 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); SSR 82–61, 1982 WL 31387 (S.S.A.). The ALJ found that the Plaintiff was capable of performing the past relevant work as a real estate agent and sales and marketing; and that this work did not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity. (Tr. 44). The ALJ found Plaintiff could perform his past relevant work both as it is actually and generally performed. (Tr. 44). See Jackson v. Bowen, 801 F.2d 1291, 1293-1294 (11th Cir. 1986) (the regulations require that a claimant not be able to perform his past kind of work, not that he merely be unable to perform a specific job that he held in the past); see S.S.R. 82–61, 1982 WL 31387 (stating that a plaintiff is not disabled when he retains the RFC to perform his past relevant work either as he actually performed it, or as it is generally performed in the national economy). Thus, a vocational expert was not necessary at the hearing.

# CONCLUSION

The Court recommends that the Decision of the Commissioner be affirmed. The ALJ's decision discusses Plaintiff's claim of disability at length, and identifies the record evidence supporting each of his findings. Upon a full and thorough review, the Court recommends that the ALJ applied the correct legal standards. The Court also recommends that substantial evidence supports the ALJ's conclusion that Plaintiff is not under a disability, due to the ALJ's finding that Plaintiff has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c).

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The Decision of the Commissioner Regarding the Plaintiff Anthony G. Scuilla be **AFFIRMED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 18th day of January, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record